(No. 33606.—

THEODORE ROTHELI, Appellant, *vs.* CHICAGO TRANSIT
AUTHORITY, Appellee.

*Opinion filed November 23, 1955*

DAVID P. KRASNER, of Chicago, (CHARLES WOLFF, and
CHARLES T. SHANNER, of counsel,) for appellant.

THOMAS C. STRACHAN, JR., ARTHUR DONOVAN, and
PAUL DENVIR, all of Chicago, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

From an adverse verdict and judgment rendered in the superior court of Cook County, plaintiff, Theodore Rotheli, appealed to the First District Appellate Court. After affirming the lower court judgment, the Appellate Court granted plaintiff a certificate of importance and plaintiff now appeals to this court urging reversal and remandment of the cause.

Plaintiff's action for damages is based upon injuries sustained by him as the alleged result of being thrown from a bus operated by the defendant, Chicago Transit Authority, a municipal corporation, in the city of Chicago as plaintiff was alighting from the bus. The complaint alleges plaintiff was a passenger for hire and while in the exercise of due care for his own safety was injured as the direct result of defendant's negligent operation of its bus by starting it violently and suddenly while plaintiff was alighting.

Plaintiff's case relied chiefly upon his own testimony as an occurrence witness. He stated that on the evening in question he boarded defendant's trolley bus, paid his fare and took a seat behind the driver. He rode to a certain intersection where he intended to take one of defendant's street cars for the purpose of taking him to his home. The Appellate Court opinion, 5 Ill. App. 2d 190, stated plaintiff had received his transfer. Although the record is silent as to plaintiff's possession of a transfer, for the purpose of this opinion we shall assume same to be the fact. Plaintiff stated that when alighting from the bus he had his right foot on the "ground" and the other on the bus step when the doors closed striking his left shoulder. He further stated that at the same time the bus started with a quick and sudden jerk causing him to fall to the ground, and while in such position the front wheel of the bus ran over his feet.

At the time of trial the bus driver was no longer in the employ of defendant. His testimony, corroborated by two of the passengers, directly contradicted plaintiff's testimony. Defendant's evidence was to the effect that the bus had come to a complete stop at the intersection; that there was no space between the exit doors of the bus and the curb of the sidewalk; that plaintiff stepped from the bus onto the sidewalk while the traffic light was red; that when the traffic signal turned green the bus door was closed and the bus motion was resumed, at which time plaintiff was standing on the sidewalk facing north about 2 or 3 feet south of the bus door. After plaintiff was struck the bus traveled 5 or 6 feet.

Plaintiff now urges here that because he was a transferring passenger for hire at the time of his injury, the trial court committed reversible error in the giving of instruction No. 16, and that the Appellate Court should have reversed and remanded the cause because of such error. In all, 28 instructions were given by the court; five were at the request of plaintiff, two were given by the court, three were given at the request of both plaintiff and defendant, and 18 were given at the request of defendant. The complained-of instruction is as follows:

"You are instructed that if you find from the evidence that the plaintiff had fully alighted from the defendant's bus and had reached a place of safety before he was injured, the relationship of passenger and carrier ceased to exist between defendant and plaintiff. Then you are instructed as a matter of law under these circumstances, the operator of the bus in question was only required to exercise toward the plaintiff ordinary care, and ordinary care is such that a person of ordinary prudence would exercise under the same and similar circumstances."

After a thorough examination of the record in this case, it appears difficult to perceive any prejudice arising out of the giving of the above defendant's instruction in

view of the fact that plaintiff's theory of recovery during the trial of this case was that he was injured while alighting from the bus, that certain portions of his body were still upon the conveyance, and that he was hurled to the ground by reason of being struck by the bus doors and the simultaneous quick and sudden starting of the bus.

Instruction No. 15, given at plaintiff's request, was as follows:

"If you believe from the evidence and under the insructions of the Court that the plaintiff had not yet fully alighted from the bus in question at the time and place in question while said bus was standing still, then you must find that the plaintiff was still a passenger of the defendant, and it became and was the duty of the defendant to exercise the highest degree of care reasonably consistent with the mode of conveyance adopted and used by the defendant and the practical operation of said bus line to stop said bus a reasonable length of time to permit the plaintiff in the exercise of ordinary care, to alight from said bus safely and not to start said bus within such reasonable time."

This last instruction is in line with plaintiff's pleading and evidence that defendant's negligence, alleged to have caused his injury, was activated when plaintiff had not yet fully alighted. Under the record of this case, we hold that instruction No. 16 was not prejudicial. A judgment will not be reversed for error unless it appears such error affected the outcome in the trial. *Lindroth* v. *Walgreen Co.* 407 Ill. 121, 136.

We have carefully reviewed all the authorities cited by both plaintiff and defendant. After a review of the case and text authorities, we are satisfied that the result reached by the Appellate Court is correct. The opinion and concurring opinions display a keen and scholarly analysis of the problem presented. The opinion of this court in *Feldman* v. *Chicago Railways Co.* 289 Ill. 25, is understandably a source of difficulty when application is sought in other

cases and no doubt prompted the granting of the Appellate Court's certificate.

In the *Feldman case* two passengers alighted on a public street in Chicago where the car came to a full stop. These passengers left the car and started for a corner of the intersection. One had finished his journey and the other was a transferring passenger, intending to continue his passage by another conveyance of the defendant. Instead of going south, as it was supposed to, the rear end of the car suddenly swung around and struck both passengers. The court made a distinction between the two passengers on the ground that the one's journey had ended whereas the other's was continuous. The court held that as a consequence the duty owed by the carrier to each of these two persons was different and that a higher degree of care was owed to Feldman because of the continuing relationship of carrier and passenger. (It is to be noted that the case of the other passenger, Burke, was not before the court—nor does it appear he filed any action.)

A later decision of this court in *Davis* v. *South Side Elevated Railroad Co.* 292 Ill. 378, made a comprehensive review of authorities on the question of the duty owed by a carrier to its passenger. We there declared at page 381, "The rule is frequently laid down that the degree of care owed to the passenger is justly lessened to the extent of the lessening of the danger involved; that the care required should be commensurate with the danger involved." We called attention in the *Davis case* to a change in doctrine by decisions and text authorities to the effect that the high-est degree of care was no longer owed by carrier to passengers using depots, station grounds, platforms and approaches when proposing to take passage, waiting for trains, leaving them, or using station facilities for reasonable convenience and accommodations, whether at the beginning or end of the journey or at intermediate points.

It was further declared in the *Davis* opinion at page

384: "There is reason and authority in support of the argument of counsel for the appellant that the same distinction should be made in the care required of a railroad when acting strictly as a carrier and the care required as to its station, depots and appurtenances as is made as to an ordinary business house with reference to the care in running its elevators and the care of floors and stairways and other parts of its premises. This court has held that a business house in the operation of its elevators is held to the same degree of care as any other carrier, (*Hartford Deposit Co.* v. *Sollitt*, 172 Ill. 222; *O'Callaghan* v. *Dellwood Park Co.* 242 id. 336, and cases cited;) but that in the maintenance and supervision of stairways on its premises a business house is only held to the exercise of reasonable and ordinary care. (*Pauckner* v. *Wakem*, 231 Ill. 276; see also, *Kaufman Department Stores* v. *Cranston*, 258 Fed. 917.) Anything that has been said in any former decision of this court which might be thought to support the contrary conclusion is hereby overruled."

The ends of justice are not served by constructing theories to support a former decision by fine-line factual distinctions where a disturbing element continually provokes in the judicial mind a doubt that substantial justice has been done. To pronounce that two passengers, both injured after alighting from a common carrier, are viewed differently by the law merely because one intends to transfer to another conveyance of the same carrier while the other does not is an unwitting creation of a condition of basic injustice.

We hold that the relationship of carrier and passenger is created by virtue of the contract of carriage for hire by the passing of consideration. While this contract is in effect the carrier owes a duty to exercise the highest degree of care consistent with the practical operation of its conveyances to protect the safety of the passenger and such duty is continuous throughout this relationship and extends to passengers who are given a transfer for continuous passage

upon another conveyance of the carrier. Nevertheless, when the carrier discharges the passenger at an intermediate point or at the end of the journey, be it in a public place or otherwise, the duty to exercise the highest degree of care is suspended and the carrier then owes the passenger that degree of care commensurate with the danger involved, and the duty to exercise again the highest degree of care is resumed when the passenger presents himself to the conveyance of the carrier within the time and at the place fixed by the contract.

We believe that the complained-of instruction, in substance, meets the above test under the record of this particular case. That part of the instruction which told the jury that the operator of the bus "was *only* required to exercise toward the plaintiff ordinary care" is objectionable for the reason that such words as "merely" and "only" should be omitted from instructions for self-evident reasons. However, in the instant case we feel the objection comes within the rule of harmless error.

For the foregoing reasons the judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*